O

# United States District Court
# Central District of California

| | |
|---|---|
| COREY CAMFIELD and MISTY CAMFIELD,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>BOARD OF TRUSTEES OF REDONDO BEACH UNIFIED SCHOOL DISTRICT; REDONDO BEACH UNIFIED SCHOOL DISTRICT (RBUSD); STEVEN E. KELLER, Superintendent of Schools, RBUSD, in his official and individual capacity; ERIK ELWARD, Director, Educational Services, RBUSD, in his official and individual capacity; ORYLA WIEDOEFT, in her official and individual capacity; ANNETTE ALPERN, Deputy Superintendent, RBUSD, in her official and individual capacity; Does 1-10 inclusive,<br><br>　　　　　　　Defendants. | Case № 2:16-cv-02367-ODW (FFM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [28]** |

## I.　　INTRODUCTION

　　Defendants Board of Trustees of Redondo Beach Unified School District (RBUSD), RBUSD, Superintendent Steven E. Keller, Director of Education Erik Elward, Jefferson Elementary School Principal Oryla Wiedoeft, and Deputy Superintendent Annette Alpern (collectively "Defendants"), move to dismiss claims two, three, four, and six, in their individual capacity, from Plaintiffs' Second Amended Complaint for failure to plead facts to support an otherwise cognizable legal

theory. In their Second Amended Complaint, Corey Camfield and Misty Camfield (collectively, "Plaintiffs")[1] allege that Defendants and individual named employees of RBUSD violated: (1) section 504 of the Rehabilitation Act; (2) Title II of the Americans with Disabilities Act (ADA); (3) California Education Code section 51100; (4) the California Tort Claims Act; (5) the United States and California Constitutions; and (6) the Bane Act. (ECF No. 26) For the reasons discussed below, the Court **GRANTS** Defendants' Motion without leave to amend.[2]

## II. FACTUAL BACKGROUND

Plaintiffs are parents of three children enrolled in Jefferson Elementary School within RBUSD. (SAC ¶¶ 5–6.) During the 2014–2015 schoolyear, one child was enrolled in third grade and two children (fraternal twins) were enrolled in fifth grade. One of the two fifth graders was eligible for special education and qualified as an individual with a disability. (*Id.* ¶ 6.)

Defendant RBUSD is a public school district in Los Angeles County. (*Id.* ¶ 7.) The RBUSD board retains ultimate responsibility for developing and implementing policies governing the operation of Jefferson Elementary, among its other schools. (*Id.* ¶ 8.) The named individual Defendants are all RBUSD employees: Steven Keller is the Superintendent; Annette Alpern is the Deputy Superintendent; Erik Elward is the Director of Educational Services; and Oryla Wiedoeft was the principal for Jefferson Elementary during the 2014–15 school year. (*Id.* ¶ 9.)

On August 26, 2014, Misty was on the Jefferson Elementary campus to identify the new classroom assignments for her three children. (*Id.* ¶ 13.) Misty was concerned about the teacher assigned to her third-grader because she "had heard that the teacher had a drinking problem that caused her attendance to be irregular," a concern she shared with Wiedoeft who scheduled a meeting with Misty the following

---

[1] To avoid confusion, the Court will refer to each Plaintiff by his or her first name, since the two Plaintiffs share a last name.

[2] After considering papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

day. (*Id.*) On August 27, 2014, the Camfields met with Wiedoeft and Elward who told Misty that her allegations were "unacceptable" and that if she continued make such allegations that she "could be barred from coming onto the school campus." (*Id.* ¶ 14.) In response, Misty told Wiedoeft that she preferred to keep her daughter out of school until a determination was made as to a new teacher. (*Id.* ¶ 15.) Wiedoeft and Elward told Misty that if she did not send her daughter to school that they would report the Camfields to the School Attendance Review Board (SARB) and that they risked having their children taken away by the state. (*Id.*)

On October 13, 2014, while picking up their children from Jefferson Elementary, Corey had an altercation with another parent. (*Id.* ¶ 16.) During this altercation, numerous students, teachers, and staff observed Corey yell in a "tone [that]was threatening" with language that included curse words such as "fuck" and "shit." (Opp'n, Ex. A, ECF No. 31.)

On October 14, 2014, Elward sent Corey a letter notifying him that he was barred from entering Jefferson Elementary because his "disruptive and threatening behavior interfere[d] with the peaceful conduct of school business." (*Id.*) Elward's letter further conditioned future entry onto school grounds to Corey providing twenty-four hour notice subject to approval by Elward. (*Id.* Ex. A.)

In January 2015, Misty visited Jefferson Elementary to observe her son in the Learning Center. (*Id.*) The Learning Center teacher had to dismiss the other students back to their original classrooms so that their identities would remain confidential. (*Id.*) This happened several times, and each time Misty would wait outside of the classroom to speak with the teacher without an appointment. (*Id.*) Around February 10, 2015, Misty began approaching instructional aids, calling them on their personal cellphones, and repeatedly asked them about information regarding instructional aids for her son. (*Id.*) On February 25, 2015, Misty became upset that her son would only have one instructional aid and used threatening and profane language to express her displeasure. (*Id.*) The next morning, Misty threatened not to sign her son's new

Individualized Education Program (IEP) unless Jefferson Elementary provided more instructional aids for her son. (*Id.*)

On March 3, 2015, Elward sent Misty a letter effectively barring her from entering the Jefferson Elementary campus. (*Id.*) In Elward's letter, she explained that the staff were intimidated by Misty's use of profanity, constant monitoring, and her open and verbal dissatisfaction with them and their work. (SAC ¶ 22.) As a result, Misty was not allowed to enter Jefferson Elementary without providing twenty-four hour notice subject to approval by Elward. (Opp'n Ex. B.)

On August 2, 2016, Plaintiffs filed a Second Amended Complaint against Defendants and individual members of RBUSD. (*See* SAC.) On August 16, 2016, Defendants moved to dismiss claims two, three, four, and six under Rule 12(b)(6). (ECF No. 28-1.) Plaintiffs filed their Opposition on September 12, 2016, and Defendants filed their Reply on September 20, 2016. (ECF Nos. 31, 34.)

## LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Generally, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the plaintiff. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### III. DISCUSSION

First, Defendants argue that there is no individual liability under the ADA. (Mot. 2–7.) Second, they assert that there is no private right of action under California Education Code section 51101 and even if Plaintiffs could state a cause of action under the code, individually, Defendants are immune from liability for discretionary acts. (*Id.* 7–12.) Third, Defendants contend that there is no tort liability under section 51101 because the individual Defendants do not have a duty to permit Plaintiffs unrestricted access to Jefferson Elementary and are nonetheless immune from individual liability for discretionary acts. (*Id.* 8, 10–12.) Finally, Defendants argue that Plaintiffs have not alleged sufficient facts to state a claim under the Bane Act. (*Id.* 13.) And because Plaintiffs have already had an opportunity to amend the Complaint, Defendants argue that Plaintiffs claims should be dismissed without leave to amend. (*Id.* 14.)

#### A. Claim Two: Individual Liability Under the ADA

Plaintiffs argue that Defendants threatened them on August 27, 2014, and unlawfully banned Plaintiffs, which interfered with their right to advocate on behalf of their Disabled Child. (SAC ¶ 33.)

Title II of the ADA provides that "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. In a case alleging discrimination in violation of the ADA, the plaintiff bears the burden of proving that he or she is disabled within the meaning of the Act. *Wong*, 410 F.3d at 1063. In addition, the plaintiff must show that the discrimination was intentional and "by reason of" his or her disability. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794; Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138–39 (9th Cir. 2001); *see also E.R.K. ex rel. R.K. v. Haw. Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013) (holding, in part, that a student must demonstrate that he or she was either excluded from participation in or denied benefits of public services, programs, or activities by reason of his or her disability).

Here, Plaintiff fails to allege sufficient facts that Defendants' actions were discriminatory based on Plaintiffs' child's disability.[3] First, Defendants did not indefinitely restrict Plaintiffs' access to Jefferson Elementary based on Plaintiffs' son's disability. According to both letters sent to Plaintiffs on October 14, 2015, and March 3, 2016, Plaintiffs could still access Jefferson Elementary so long as they provided Wiedoeft written notice twenty-four hours beforehand and subject to approval. (Opp'n Exs. A, B.) Further, Plaintiffs concede that they "do not have the right to unrestricted access" to Jefferson Elementary. (*Id.* 12.) Accordingly, Defendants did not indefinitely restrict Plaintiffs' access to Jefferson Elementary and nor was the conditioned restriction based on Plaintiffs' son's disability.

Further, Plaintiffs argue that Defendants are personally liable under Title II of the ADA. However, the anti-retaliation provision of Title I and II of the ADA, removing individual liability, is only applicable to employers. (*Id.* 1–2.)

The ADA has a single anti-retaliation provision that applies to both Title I and Title II of the ADA. It provides: "No person shall discriminate against any individual

---

[3] In any event, the child is not named as a plaintiff in this action, which would be necessary for a successful claim of discrimination based on the child's disability.

6

because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). However, Title II does not provide a remedy for plaintiffs seeking individual liability for ADA claims. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 (9th Cir. 1993) (holding that defendants were not liable in individual capacities because there is no need to "stretch the liability of individual employees beyond the respondeat superior principle intended by Congress").

Here, Plaintiffs' legal arguments are not supported by the facts alleged in the pleadings. Plaintiffs claim that Defendants are personally liable for restricting Plaintiffs' ability to advocate for their disabled child. (SAC ¶ 35.) However, Plaintiffs cannot sue Defendants in their individual capacities. *Stevenson v. Indep. Sch. Dist. No. I-038 of Garvin Cty., Okla.*, 393 F. Supp. 2d 1148 (W.D. Okla. 2005) (holding that parents cannot sue teacher and principal, in individual capacity, for violation of the ADA because personal liability under the Act is reserved for the employment context). Accordingly, Plaintiffs fail to sufficiently plead that Defendants are personally liable and the Court **GRANTS** the motion to dismiss Plaintiffs' second claim.

**B. Claims Three & Four: California Education Code Section 51101 & Tort**

*1. Private Right of Action Under California Education Code Section 51101*

Plaintiffs argue that Defendants unlawfully restricted Plaintiffs' rights to enter school property to observe the teachers and the principal of Jefferson Elementary where their children were enrolled. (SAC ¶ 37.) Plaintiffs' position is that although the statute does not specify a remedy, the statute embodies a public policy sufficient to give rise to tort liability. (Opp'n 6.) However, Defendants argue that section 51101 does not impose any legal duty on Defendants in their individual capacities and therefore Defendants cannot be individually liable in tort. (Mot. 7, 8.)

California Education Code section 51100 is intended to promote parental participation in schools. Cal. Educ. Code § 51100(a) ("It is essential to our democratic form of government that parents and guardians . . . and other citizens

Case 2:16-cv-02367-ODW-FFM   Document 42   Filed 12/02/16   Page 8 of 12   Page ID #:486

participate in improving public education institutions. Specifically, involving parents and guardians of pupils in the education process is fundamental to a healthy system of public education."). Section 51101 encourages parents to "participate in the education of their children." Cal. Educ. Code § 51101(a)(1)–(16)  (providing that parents shall receive access to school campuses "[w]ithin a reasonable period of time following making the request, to observe the classroom or classrooms in which their child is enrolled . . . , to meet with their child's teacher . . . , and the principal of the school.").

Plaintiff relies on *Montalvo v. Zamora*, 7 Cal. App. 3d 69 (Ct. App. 1970). Unfortunately, Plaintiffs' reliance on *Montalvo* is misplaced. In that case, the court held that an employee had a valid cause of action for wrongful termination in violation of public policy. *See Id.* at 77. However, *Montalvo* and its progeny are the sole provenance of employment related causes of action in tort law. *See Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (Cal. 1980) (holding that an employee can assert a tort claim against an employer who terminates that employee for refusing to commit a crime because the employer violates a basic duty imposed by law); *see also Harris v. Atlantic Richfield, Co.*, 14 Cal. App. 4th 70 (Ct. App. 1993) (holding that a franchisee cannot bring a tort claim against the franchisor for a breach of written agreement in violation of public policy). Additionally, the California Supreme Court has held that a "violation of a state statute does not necessarily give rise to a private cause of action . . . [and the validity of a claim] depends on whether the Legislature manifested an intent to create" a private cause of action under that statute. *Lu v. Haw. Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (Cal. 2010).

Here, California Education Code section 51101 is not actionable because it merely states a policy. Nowhere in the Education Code, dealing with parental involvement, is there a provision for relief for violating public policy. *See* Cal. Educ. Code §§ 51100–02. Plaintiffs' attempt to draw the Education Code into the ambit of California employment laws lacks legal support and is unpersuasive. Moreover, section 51101 provides parents a reasonable period of time to observe their children in

the classroom after a request to visit the campus. Defendants merely restricted access and required Plaintiffs submitting request to visit Jefferson Elementary at least twenty-four hours before visiting the campus. (Opp'n Exs. A, B.) In the instant case, Defendants' requirement that a parent desiring to visit must provide notice merely comports with section 51101's provision and does not limit Plaintiffs' access to Jefferson Elementary beyond the statute's minimum requirement. Accordingly, this Court **GRANTS** Defendants' motion to dismiss Plaintiffs' third claim.

*2. Tort Claim and Immunity for Discretionary Acts*

Since section 51101 is not actionable and Plaintiffs fail to plead that Defendants unlawfully restricted their access to Jefferson Elementary, Plaintiffs claim in tort necessarily fails. Accordingly, Defendants are not individually liable in tort.

Under California law, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code §§ 815, 820.2. Specifically, this immunity extends to all "public officers when performing within the scope of their power acts which require the exercise of discretion or judgment." *Caldwell v. Montoya*, 10 Cal. 4th 972, 979 (Cal. 1995) (noting the historical policy reasons for maintaining immunity for discretionary acts, which includes not deterring officials from "the zealous and unflinching discharge of their public duties," with "free and independent judgment.").

School administrators are immune from liability for discretionary acts in order to adequately execute their duties. *See Nicole M. ex rel. Jacqueline M. v. Martinez Unified. Sch. Dist.*, 964 F. Supp. 1369, 1389–90 (N.D. Cal. 1997). Thus, RBUSD's ability to discipline and conduct investigations is protected as discretionary acts. *See* Cal. Gov. Code § 820.2; *Petaluma City Sch. Dist.*, 830 F. Supp. at 1582–83. Accordingly, the Court finds the individual Defendants immune from liability for discretionary acts and **GRANTS** the motion to dismiss Plaintiffs' fourth claim.

### C. Claim Six: Bane Act Violation

Plaintiff argues that Defendants violated the Bane Act by means of threats, intimidation and coercion, including but not limited to threatening to have Plaintiffs arrested and having interfered with, or attempted to interfere with Plaintiffs' rights secured by the Constitution and laws of the State of California, including their rights to freedom of speech and due process. (SAC ¶ 51.) However, Defendants argue that they lawfully restricted Plaintiffs' access to campus under California Penal Code section 626.8. (Reply 7.) Further, Defendants argue that they are immune from liability for discretionary acts under Government Code section 820.2. (*Id.* 8.)

Section 52.1 codifies the Bane Civil Rights Act, which provides a private right of action for damages against any person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(b). Section 52.1 was intended to be an analogous state law to 42 U.S.C. § 1983, Cal. Bill Analysis, AB 2719, Feb. 25, 2000, but section 52.1 differs from section 1983 in three respects: it applies to private actors as well as to government agents; liability is limited to constitutional and statutory violations done "by threats, intimidation or coercion"; and there is no qualified immunity. *Venegas v. Cnty. of L.A*, 153 Cal. App. 4th 1230, 1232 (Ct. App. 2007) (section 52.1 does not extend to all tort actions because its provisions are limited to threats); *see also McFarland v. City of Clovis*, 163 F.Supp.3d 798, 806 (E.D. Cal. 2016) (finding Bane Act violations have two elements: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion).

Here, Plaintiffs fail to plead sufficient facts that Defendants' communications contained "threats, intimidation or coercion." First, during the August 27, 2014, meeting, Plaintiffs allege that Wiedoeft and Elward "threatened" Plaintiffs that it was

illegal to keep their daughter from attending school and that they would have to report Plaintiffs to the SARB. (SAC ¶ 15.) Second, Plaintiffs argue that the letters that Defendants sent on October 14, 2014 and March 3, 2015 threatened Plaintiffs with arrest if Plaintiffs did not comply with Defendants requirement that Plaintiffs provide approved written notice of future campus visits. (Id. ¶¶ 47, 51.)

The Defendants' communications to Plaintiffs were not threats. Even though Plaintiffs were unhappy with their daughter's teacher, Plaintiffs were still legally obligated to bring their daughter to school. *See* Cal. Educ. Code § 48200. Despite Plaintiffs' allegations that Defendants "used their position of authority to make false threats of criminal prosecution" (SAC ¶ 29.), Defendants plainly and truthfully stated that there could be legal consequences if Plaintiffs did not bring their daughter to school. Accordingly, Defendants' conduct did not constitute threats or intimidation. Moreover, Defendants' actions did not interfere with a constitutional or legal right of the Plaintiffs. By law, each of Plaintiffs' children were required to participate in full-time education. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' sixth claim.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss claims two, three, four, and six. The Court agrees with Defendants that Plaintiffs have had sufficient time to develop their pleading after filing a Second Amended Complaint and this Court **GRANTS** Defendants' motion without leave to amend.

**IT IS SO ORDERED.**

December 2, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**