United States District Court
Central District of California

| | |
|---|---|
| COREY CAMFIELD AND MISTY CAMFIELD,<br><br>                Plaintiff,<br>   v.<br><br>BOARD OF TRUSTEES OF REDONDO BEACH UNIFIED SCHOOL DISTRICT; STEVEN E. KELLER; ERIK ELWARD; ORYLA WIEDOEFT; ANNETTE ALPERN; REDONDO BEACH UNIFIED SCHOOL DISTRICT; and DOES 1–10, inclusive,<br><br>                Defendants. | Case No.: 2:16-cv-02367-ODW-FFM<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO RETAX COSTS** |

## I. INTRODUCTION

On April 4, 2016, Plaintiffs Corey and Misty Camfield (collectively, "Plaintiffs") filed suit against Defendants Board of Trustees of Redondo Beach Unified School District; Steven E. Keller; Erik Elward; Oryla Wiedoeft; Annette Alpern; and Redondo Beach Unified School District (collectively, "Defendants"). (ECF No. 1.) Plaintiffs move to retax costs following the Court entering judgment in

favor of Defendants, and the Clerk taxing costs totaling $6,715.07. (ECF Nos. 70, 76–77.) Plaintiffs argue they should not be held liable for costs, or, in the alternative, for the Court to reduce the Clerk's $6,715.07 Bill of Costs, and stay costs pending appeal. (ECF No. 77.) For the following reasons, the Court **DENIES** Plaintiffs' Motion.

## II. FACTUAL BACKGROUND

Defendant Redondo Beach Unified School District ("RBUSD") is a public school district in California. (Statement of Uncontroverted Facts ("SUF") ¶ 1, ECF No. 55-2.) Jefferson Elementary, the school at issue in this case, is within RBUSD. (*Id.* ¶ 6.) Defendant are: Dr. Steven Keller, the RBUSD Superintendent of Schools, Dr. Erik Elward, RBUSD's Director of Educational Services, Dr. Annette Alpern, RBUSD's Deputy Superintendent for Educational Services, and Dr. Oryla Wiedoeft, the principal of Jefferson Elementary during the 2014-15 school year. (*Id.* ¶¶ 2–5.)

Plaintiffs Corey and Misty Camfield are the parents of three children, all of whom were enrolled at Jefferson Elementary during the 2014-15 school year. (*Id.* ¶ 7.) During that school year, two of Corey and Misty's children—"Minor 1" and "Minor 2"—were enrolled in the Fifth Grade, and their other child—"Minor 3"—was enrolled in the Third Grade. (*Id.* ¶ 8.) During this time, Minor 1 received special education services at Jefferson Elementary. (*Id.* ¶ 9.) At all relevant times, Minors 2 and 3 were not diagnosed with any disability nor had they ever been deemed eligible for special education services. (*Id.* ¶ 10.)

Plaintiffs' claims arise from the conflict between two competing rights: the right of elementary school children's parents to access their children's school campus and the right of the school to restrict that access in certain circumstances. Following a few disagreements and other incidents between Plaintiffs and administrators, teachers, and other parents at Jefferson Elementary School, the school restricted Plaintiffs' access by requiring them to obtain advance permission to visit the school's campus.

(SUF ¶¶ 65, 84.) In response, on April 6, 2016, Plaintiffs sued the school district and several individuals in their official and individual capacities for retaliation and violation of Plaintiffs' constitutional rights.[1] (*See* Compl., ECF No. 1.)

The Plaintiffs' Second Amended Complaint ("SAC") listed six causes of action. (SAC, ECF No. 26.) However, on December 2, 2016, this Court dismissed half of them, leaving only the following claims, at the time of summary judgment:[2] (1) retaliation in violation of Section 504 of the Rehabilitation Act against RBUSD and the individual defendants in their individual capacities; (2) retaliation in violation of Title II of the Americans with Disabilities Act ("ADA") against RBUSD and the individual defendants in their official capacities; and (3) deprivation of civil rights, under 42 U.S.C. § 1983, against the individual defendants in their individual capacities. (ECF No. 42; *see* SAC, ECF No. 26.)

In December 2016, Plaintiffs' counsel "invited defendants to move for summary judgment" because "she considered this case to be about the law, not the facts." (ECF No. 59; Mot. 5, ECF No. 85.) Five months later, Defendants took five depositions. (ECF No. 73-1.) On June 5, 2017, Defendants sought summary judgment on the remaining claims, and the Court granted the Motion on July 17, 2017. (ECF Nos. 55–56, 69.) Plaintiffs subsequently appealed to the Ninth Circuit Court of Appeals on July 27, 2017. (ECF No. 71.)

On July 27, 2017, Defendants, as the prevailing party, applied to the Clerk to tax costs, and sought $9,281.85. (Appl., ECF No. 73.) Plaintiffs objected and Defendants responded. (ECF Nos. 74–75.) After removing unrecoverable costs, the Clerk's Bill of Costs totaled $6,715.07. (ECF No. 76.)

---

[1] In July of 2016, Plaintiffs filed a First Amended Complaint, and in August of 2016, they filed a Second Amended Complaint. (ECF Nos. 20, 26.)

[2] The Court limits its analysis to these remaining claims against Defendants, as these are the only allegations pertinent to the Court's Bill of Cost analysis.

On December 7, 2017, Plaintiffs moved to retax costs. (ECF Nos. 76–77.) Plaintiffs also requested, and the Court granted, leave to file copies of their tax returns under seal. (ECF Nos. 78–79, 82, 86.) In the present motion, Plaintiffs assert that they should not be held liable for costs because (1) Plaintiffs have very limited resources, (2) assessing costs would chill civil rights litigation, and (3) this case involves substantial public importance. (ECF No. 85.) In the alternative, Plaintiffs ask the court to reduce Defendants' claimed expenses, alleging that the taxed costs are excessive because they include costs related to Plaintiffs' ADA claim as well as unnecessary depositions. (*Id.*) Defendants oppose, as set forth more fully below. (Opp'n, ECF No. 90.)

### III. LEGAL STANDARD

The district court reviews the Clerk's Bill of Costs de novo. *Jardin v. DATAllegro, Inc.*, No. 08-CV-1462-IEG WVG, 2011 WL 4835742, at *1 (S.D. Cal. Oct. 12, 2011). However, this review is limited to the record before the Clerk. *See* L.R. 54-8. As a general matter, Federal Rule of Civil Procedure 54(d) creates a strong presumption in favor of awarding costs to the prevailing party. *Miles v. State of California*, 320 F.3d 986, 988 (9th Cir. 2003). This presumption is so strong that a court "need not give affirmative reasons for awarding costs" to the prevailing party in rendering its decision on a motion to retax. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

To overcome this strong presumption in favor of awarding costs to the prevailing party, the losing party must convince the court that the case on which the Bill of Tax rests is "not ordinary," or, in other words, that it would not be equitable for the losing party to bear the costs. *Id.* (quoting *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 592–593 (9th Cir. 2000)). In evaluating whether a case is "not ordinary" a court weighs seven factors: (1) the losing party's financial resources; (2) whether there was misconduct by the prevailing party; (3) the possible

chilling effect of imposing high costs on future civil rights litigants; (4) whether the issues in the case were close and difficult; (5) whether the prevailing party's recovery was nominal or partial; (6) whether the losing party litigated in good faith; and (7) whether the case presented a landmark issue of national importance. *Champion Produce, Inc. v. Ruby Robinson Co.,* 342 F.3d 1016, 1022 (9th Cir. 2003); *see also Ass'n of Mexican-Am. Educators*, 231 F.3d at 593 (explaining that factors are not an exhaustive list).

If the Court determines that the prevailing party is entitled to costs, it must then determine which costs are taxable. A cost is taxable if it falls within one of the categories listed in 28 U.S.C. § 1920, including: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.[3] While the Court may only award costs that fall within the prescribed categories, it is "free to interpret" the meaning of each category. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 633 F.3d 1218, 1221 (9th Cir. 2011), *vacated and remanded on other grounds*, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012).

### IV. DISCUSSION

### A. Whether Costs Should Be Denied Entirely

Plaintiffs request that this court to exercise its discretion and deny the Clerk's Bill of Costs in its entirety because (1) Plaintiffs have very limited resources; (2) assessing costs under these circumstances would chill civil rights litigation; and (3) the case involves an issue of substantial importance statewide. (ECF No. 85.) The Court, however, concludes that these factors weigh in favor of affirming the Clerk's

---

[3] These categories are expounded upon by Local Rule 54-3.

Bill of Costs against Plaintiffs for $6,715.07. Although the Plaintiffs only argued three of the factors, the Court will discuss each factor in turn.

### 1. Plaintiffs' Limited Financial Resources

As a preliminary matter, pursuant to Local Rule 54-8, Defendants urge the Court to disregard Plaintiffs' additional evidence regarding their financial status because it was not part of the record before the Clerk. (Opp'n. 2, ECF No. 90.) Local Rule 54-8 provides that the court's review the clerk's taxation of costs "will be limited to the record made before the clerk, and encompass only those items specifically identified in the motion." L.R. 54-8.

The burden is on Plaintiffs to prove their financial resources. *See Mam v. City of Fullerton*, No. SACV111242JLSMLGX, 2014 WL 12573550, at *1 (C.D. Cal. July 24, 2014) ("The losing party has the burden of showing why costs should not be awarded."); *see also Rossi v. City of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015) ("The burden of proving financial hardship falls on the objecting party, who must provide the court with sufficient documentation such as affidavits, statements of assets and income, and a schedule of expenses."). In their objection to the Defendants' application to tax costs, Plaintiffs only briefly describe their family dynamics and offer no evidence of their financial status other than the fact that their counsel represented them on a contingency basis. (*See* Pls. Obj. 5–7, ECF No. 74.) The Court cannot adequately evaluate Plaintiffs' financial state based on a single declaration from the Plaintiffs' counsel. *See Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (requiring sufficient documentation in order to "limit any incentive for litigants of modest means to portray themselves as indigent").

In response, Plaintiffs argue that the scope of the present motion need not be identical to the record before the Clerk. (Reply, ECF No. 92.) They base this argument on Federal Rule of Civil Procedure 58, which does not limit the scope of the court's review. However, "[l]ocal Rules are laws of the United States and are valid if

not inconsistent with the Federal Rules of Civil Procedure." *Ayer v. Frontier Commc'ns Corp.*, No. EDCV161946PADTBX, 2017 WL 3891358, at *2 (C.D. Cal. Sept. 5, 2017); *see* Fed. R. Civ. P. 83. While it is true that the Federal Rules do not limit the court's review, the Local Rules may, and do, establish narrower guidelines for review of a Clerk's Bill of Costs. *See Murray v. Cty. of Orange*, No. SACV1001675JVSMLGX, 2013 WL 12174698, at *2 (C.D. Cal. July 23, 2013) (holding that if the court considered the additional details requested, it "would be going beyond the record presented to the Clerk, contrary to Local Rule 54-8"); *Fantastic Sams Salon Corp. v. Moassesfar*, No. 214CV06727ODWE, 2017 WL 2468768, at *2 (C.D. Cal. June 7, 2017); *Memory Lane, Inc. v. Classmates Int'l, Inc.*, No. SACV11940JLSRNBX, 2014 WL 12617383, at *3 (C.D. Cal. July 25, 2014). By its terms, Local Rule 54-8 limits the court's review of a motion to retax costs to the record before the court. L.R. 54-8. Therefore, the Court need not address Plaintiffs' additional evidence of their tax returns.

The total cost here is $6,715.07, which is a relatively small award. *Compare Save Our Valley*, 335 F.3d at 946 (upholding the "relatively small sum" of $5,310.55)*, with Stanley,* 178 F.3d at 1080 (denying to award the "high cost" of $46,710.97 against an unemployed civil rights plaintiff), *and Ass'n of Mexican–American Educators*, 231 F.3d at 593 (holding no abuse of discretion in denying "overwhelming" and "extraordinarily high" costs of $216,443.67 against plaintiffs whose "resources are limited"). Defendant's costs here are not so high—nor are Plaintiffs' means so limited—as to warrant denying costs. Further, "economic disparity, by itself, [does not] rebut the strong presumption in favor of awarding costs. *Mam*, 2014 WL 12573550, at *3.

Additionally, the cost award here does not exceed the Plaintiffs' annual income. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1248 (9th Cir. 2014) (declining to award costs of $13,958.16 against a plaintiff with an annual income of

only $11,622 because the cost exceeded her annual earnings). Therefore, this case does not present "the rare occasion where severe injustice will result from an award of costs." *Save Our Valley*, 335 F.3d at 945. Accordingly, Plaintiffs' limited financial means are not a basis to deny costs in their entirety. *See Sorgen v. City & Cty. of San Francisco*, No. 05CV03172 TEH, 2007 WL 521235, at *3 (N.D. Cal. Feb. 15, 2007) ("[F]inancial resources do not necessarily warrant denial of costs in all instances.").

Plaintiffs have also made it clear that their obligation to pay attorneys' fees and costs is dependent on prevailing in this litigation. (ECF No. 85.) Because Plaintiffs lost on summary judgment, there is not sufficient evidence that Plaintiffs themselves would have to pay for the cost award or whether their counsel would be responsible for it pursuant to a fee agreement. (ECF No. 69.) *See Tibble v. Edison Int'l*, No. CV 07-5359 SVW AGRX, 2011 WL 3759927, at *3 (C.D. Cal. Aug. 22, 2011), *aff'd*, 520 F. App'x 499 (9th Cir. 2013) (finding a cost award would not likely have a chilling effect on future litigants where a fee arrangement provided that plaintiff's counsel, not the plaintiff, would be liable for costs).

Plaintiffs have not provided any authority supporting their position that the Court should consider the financial assets of a party's *counsel* when reviewing costs. However, even considering Plaintiffs' counsel's financial status, the Court is not persuaded to reduce the bill of costs, when considering the presumption in favor of awarding costs to the prevailing party. *See Duvigneaud v. Garcia*, No. 04CV580 BTMWMC, 2007 WL 2009800, at *1 (S.D. Cal. July 5, 2007) ("To allow plaintiffs to file cases without the risk of bearing the costs of an unsuccessful action would create an inequity in favor of filing plaintiffs and an inefficiency in the courts.").

**2. No Chilling Effect on Future Civil Rights Litigants**

Next, Plaintiffs contend that an award of costs will chill future civil rights litigants because it will deter attorneys from entering into pro bono agreements with underprivileged clients. (ECF No. 85.) However, the Court disagrees. The cost here

is well within the normal range awarded by courts against individual civil rights litigants. *See, e.g.*, *Mulligan v. Yang*, No. CV 15-712 DDP (AJWX), 2017 WL 826909, at *1 (C.D. Cal. Mar. 2, 2017) (holding that an award of $6,281.85 was "a reasonable sum that confirms the ordinary nature of the [civil rights] case"); *Sorgen*, 2007 WL 521235, at *3 (holding that $4,987 is a "relatively modest amount of cost[] . . . unlikely to chill future civil rights litigants"). Based on the circumstances of this case, the Court cannot conclude that imposing a modest tax for costs on Plaintiffs would have a chilling effect on future civil-rights litigants.

### 3. Landmark Issue of National Importance

Next, Plaintiffs argue that this case is of substantial importance because limiting a parent's ability to actively participate in their child's education, without an appeal process, raises serious concerns. (ECF No. 85.) In support, Plaintiffs reference complaints received by the Los Angeles Unified School District, and the District's creation of an appeal process for parents kept off campus. (*Id.*)

In *Escriba*, the court found the issues to be of national importance where the plaintiffs presented statements from the United States Department of Labor and a California public official that explained the significance of the case. 743 F.3d at 1248. Here, Plaintiffs have not presented such credible evidence. *See Mulligan*, 2017 WL 826909, at *2 ("While worthy efforts to probe the laws [sic] limits should not be discouraged, Plaintiff's case does not approach the standard set in *Escriba*."). Nevertheless, the Court agrees with Plaintiffs that a parent's ability to advocate for his disabled child on a public school campus should be protected. California has enacted legislation that specifically addresses how school administrators may deal with "disruptive" parents, and Plaintiffs believe that Defendants failed to comply with those statutory provisions. (ECF No. 92.) Thus, this action does implicate a public interest, and this factor tips in favor of granting Plaintiff's Motion. (*See* ECF No. 69.)

### 4. Other Factors Weigh in Favor of Denying Plaintiffs' Motion to Retax Costs

The remaining factors weigh in favor of denying Plaintiffs' motion to retax costs. Defendants did not engage in misconduct, and the issues were not close and difficult. Plaintiffs' state claims were dismissed very early in the case. (ECF No. 42.) The remaining claims were decided on summary judgment—some of which were not contested—and the case was not "vigorously litigated" or so complex as to justify denying costs to the prevailing party. (*See* ECF No. 69); *cf. Schaulis v. CTB/McGraw-Hill, Inc.*, 496 F. Supp. 666, 680 (N.D. Cal. 1980) (denying taxable costs to the defendant at least in part because the case was "vigorously litigated"). Although the Plaintiffs acted in good faith, this fact alone is unpersuasive. *See Van Horn v. Dhillon*, No. 08-CV-01622 LJO DLB, 2011 WL 66244, at *6 (E.D. Cal. Jan. 10, 2011) (refusing to deny costs on grounds of good faith "because plaintiff was at all times legally and ethically obligated to act in good faith").

Based on the foregoing reasons, Plaintiffs have not overcome the strong presumption in favor of awarding costs to the prevailing party. *See Save Our Valley*, 335 F.3d at 946 ("[T]he district court needs no affirmatively expressed reason to tax costs. Rather, it need only conclude that the reasons advanced by the party bearing the burden—the losing party—are not sufficiently persuasive to overcome the presumption."). Accordingly, the Court declines to deny the Clerk's Bill of Costs in its entirety.

### B. Whether the Court Should Reduce the Clerk's Bill of Costs

The Clerk awarded a total of $6,715.07 in taxed cost to the Defendants. (ECF No. 76.) Plaintiffs argue that the taxed costs are excessive because they include costs related to the Plaintiffs' ADA claim as well as unnecessary depositions. (ECF No. 85.) The Court finds that Plaintiffs have failed to show that any of the costs taxed by the Clerk are improper.

### 1. ADA Claims

Plaintiffs make a threshold argument that Defendants' costs are not recoverable as a matter of law because at least part of this action arises under the ADA. (ECF No. 85.) Costs may only be awarded under the ADA "if the plaintiff's action was frivolous, unreasonable or without foundation." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1186 (9th Cir. 2001). However, of the five causes of action Plaintiffs asserted, one was a claim under the Rehabilitation Act, which is factually and legally identical to Plaintiffs' ADA claim. (ECF No. 90); *Douglas v. Cal. Dep't of Youth Auth.*, 285 F.3d 1226 n.3 (9th Cir. 2002) (quoting *Allison v. Dep't of Corr.*, 94 F.3d 494, 496 (8th Cir. 1996)) ("[C]ases interpreting either [Section 504 or the ADA] are applicable and interchangeable.").

The prevailing party in Rehabilitation Act and section 1983 actions is entitled to recover its costs, regardless of whether the claim was frivolous. *See Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1053 (9th Cir. 2009); *Tubbs v. Sacramento Cty. Jail*, 258 F.R.D. 657, 659 (E.D. Cal. 2009). Plaintiffs argue the Court should deny all costs because the costs incurred in connection with the ADA claim cannot reasonably be separated from the costs incurred from Plaintiffs' other claims. (ECF No. 85.) In response, Defendant's argue they incurred the exact same cost defending the Rehabilitation Act claim as they did defending the ADA claim. (ECF No. 90.) The Court finds Defendants' arguments more persuasive, as they should not be barred from receiving costs simply because Plaintiffs also allege a claim under the ADA, when all their costs would have been incurred and recoverable absent the ADA claim. *See Ass'n of Mexican-Am. Educators*, 231 F.3d at 593 (noting that the court did not intend "to suggest that the presumption in favor of awarding costs to prevailing parties does not apply to defendants in civil rights actions").

Plaintiffs also request that the Court reduce costs by 50% because the court in *Martin* awarded costs for non-ADA claims in proportion to the percentage of the total

litigation those claims represented. 560 F.3d at 1053. In that case, the ADA claims were the central claim and the Ninth Circuit deferred to the discretion of the district court's apportionment because the court "presided over the case from its inception." *Id.* Here, the Court does not choose to exercise its discretion and reduce the cost by 50% on the ground that Plaintiffs also asserted an ADA claim, which is nearly identical to the Rehabilitation Act Claim, because Defendants would have incurred the costs anyway.

Regardless, as Defendant's allege, Plaintiffs' ADA claim was arguably without foundation. *See Harris v. Stonecrest Care Auto Ctr., LLC*, 559 F. Supp. 2d 1088, 1090 (S.D. Cal. 2008) (quoting *Int'l Union of Petroleum & Industrial Workers v. W. Indus. Maint., Inc.,* 707 F.2d 425, 430 (9th Cir.1983)) ("An action is frivolous when 'the result is obvious or the arguments of error advanced are wholly without merit.'"). Although Plaintiffs provided a prima facia case for the ADA and Rehabilitation Act claims, the Court held that Plaintiffs did not meet their burden because there was "no genuine dispute that Defendants had a legitimate, non-retaliatory or pretextual basis for restricting Misty's access to campus." (ECF No. 69.) Plaintiffs admitted in their Reply that Corey had no valid claim for retaliation. (Reply 2, ECF No. 62 ("Therefore, summary judgment must be granted in support of defendants as to Corey Camfield's first and second causes of action.").) Moreover, the Court noted that Plaintiffs "reference[d] no facts whatsoever to support" their equal protection claim and failed to bring any "meaningful citations to case law supporting parents' unfettered right to access an elementary school campus" to the Courts attention. (ECF No. 69.) Of the five claims brought by Plaintiffs, Defendants prevailed on every one. (*Id.*); *see, e.g.*, *Kohler v. Bed Bath & Beyond of California, LLC*, No. 11-CV-04451-RGK-SPX, 2012 WL 12885071, at *3 (C.D. Cal. Sept. 26, 2012) (finding that attorneys' fees were warranted where eight of ten ADA claims were frivolous because

they had no factual basis). Therefore, Defendants are entitled to recover the full amount of their taxable costs.

**2. Depositions**

Plaintiffs argue that there was no need for Defendants to take any depositions before filing their motion for summary judgment and that the $487.00 that Defendants incurred from renting a room for Robert Boitano's deposition was unnecessary because there were complimentary rooms available. (ECF No. 85.) Local Rule 54-3.5(a) permits costs for "all depositions used for any purpose in connection with the case." L.R. 45-3.5(a). Therefore, "the question is whether the deposition costs Plaintiffs oppose were necessarily obtained for use in the case; specifically, whether the depositions, at the time they were taken, could reasonably have been expected to be used for trial preparation." *Politte v. United States*, No. 07CV1950 AJB WVG, 2012 WL 4845566, at *3 (S.D. Cal. Oct. 10, 2012).

Plaintiffs argue that Defendants should not have waited several months to take five depositions and then move for summary judgment, after Plaintiffs chose not to dispute certain facts and explicitly invited Defendants to move for summary judgment. (ECF No. 85.) Defendants took depositions of key individuals, four of whom were parties to the case: Corey and Misty Camfield, the Plaintiffs; Eric Elward and Dr. Oryla Wiedoeft, the two main district staff responsible for issuing disruptive parent letters; and Robert Boitano, the parent with whom Corey Camfield has had several altercations with. (*Id.*; SUF ¶ 1, ECF No. 55-2.) When the depositions were taken, Defendants could reasonably have been expected that they would be used for trial preparation or for Defendants' summary judgment motion. *See also Maurice Mitchell Innovations, L.P. v. Intel Corp.,* 491 F.Supp.2d 684, 687 (E.D. Tex. 2007) ("[C]osts should not be disallowed merely because the deposition was not ultimately used at trial or in connection with a dispositive motion.").

As for the room rental, Plaintiffs intentionally mischaracterized this charge to the Court. They allege that Defendants were charged for refreshments during the deposition of Robert Boitano. (ECF No. 85.) However, there were no such charges, as the invoice for the room rental clearly lists $0.00 in charges for the refreshments. (ECF No. 73, Ex. F.) Although the attachment provided by Plaintiffs indicates that Esquire Deposition Solutions may provide complementary conference rooms, (Tiffany Decl. 3, ECF No. 77), Plaintiffs did not submit this with their objection to the Clerk, and thus the Court cannot consider it. As a result, the Court cannot find that Defendants incurred unnecessary costs from depositions in the course of this litigation.

**C.     Whether the Court Should Grant Stay Pending Appeal**

Plaintiffs also request an unsecured stay of execution of the clerk's taxation order pending appeal. (ECF No. 85.) Under FRCP 62(d), "if an appeal is taken, the appellant may obtain a stay by supersedeas bond." *See Jardin* 2011 WL 4835742, at *9. However, for an appellant to receive a waiver of a bond and an unsecured stay, the case must be "extraordinary." *Id.* (quoting *Bemo USA Corp. v. Jake's Crane, Rigging & Transp. Int'l Inc.*, No. 2:08-CV-745 JCM PAL, 2010 WL 4604496, at *1 (D. Nev. Nov. 5, 2010)).

Plaintiffs rely on *Steffens v. Regus Group, PLC*, where the court concluded it was equitable to stay the clerk's award of costs without requiring the party to post a supersedeas bond. No. 08CV1494-LAB WVG, 2012 WL 628235, at *3 (S.D. Cal. Feb. 24, 2012). However, as Defendants correctly point out, that case is clearly distinguishable. Unlike *Steffens*, where the court's decision was based on the fact that the case had been "hard fought" because plaintiff's arguments survived a motion to dismiss and the summary judgment was not a "slam dunk," here, Plaintiffs' claims lacked factual basis and every claim was easily denied on summary judgment. *Id.*;(ECF No. 69.)

14

Supersedeas bonds are necessary to protect the prevailing party's rights and the court from frivolous appeals that waste time and money. *See Jardin*, 2011 WL 4835742, at *9 (quoting *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979)) ("The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal."); *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988) ("The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment."). The Court does not find sufficient justification for waiving Rule 62's bond requirement.

Although Plaintiffs argue that the relatively small sum in cost is, in reality, a "very significant sum" to them, the Court does not find that Plaintiffs' means are so limited that they will suffer "irreparable injury" *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2013 WL 843104, at *5 (N.D. Cal. Mar. 6, 2013) (denying the defendant's motion to stay the taxation of costs, even though the plaintiff may succeed on appeal, because it does not amount to "irreparable injury" and defendants "have an interest in immediate payment"). Because Plaintiffs will not suffer irreparable harm absent a stay, the Court does not find a compelling reason to deviate from the general rule of awarding costs to the prevailing party. Fed. R. Civ. P. 54(d). The Court denies Plaintiffs' request for an unsecured stay.

//
//
//
//
//
//
//
//

15

## V. CONCLUSION

As set forth above, the Court **DENIES** Plaintiffs' Motion on all counts. (ECF No. 85.) Accordingly, the Clerk's Bill of Costs totaling **$6,715.07** stands, and the Court **DENIES** Plaintiffs' request for a stay of enforcement pending appeal.

**IT IS SO ORDERED.**

February 14, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**